**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RICHARD SOTO, | : | Civil Action No. 12-2963 (RMB) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | OPINION |
|  | : |  |
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Respondent. | : |  |
|  | : |  |

**APPEARANCES:**

RICHARD SOTO, Petitioner pro se
#08748-067
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, New Jersey 08640

JOHN ANDREW RUYMANN, AUSA
OFFICE OF THE U.S. ATTORNEY
402 East State Street, Suite 430
Trenton, New Jersey 08608

**BUMB, District Judge**

Petitioner, Richard Soto, a federal prisoner confined at

the Federal Correctional Institution in Fort Dix, New Jersey

("FCI Fort Dix"), at the time he filed this action, brings this

habeas petition pursuant to 28 U.S.C. § 2241, challenging the

decision by the Federal Bureau of Prisons ("BOP") to provide

1

[Petitioner] with "insufficient" time in a Residential Re-entry Center ("RRC"), allegedly in violation of the Second Chance Act of 2007 ("SCA").  (Petition, pg. 1.)

Based on this Court's review of the pleadings and relevant record as provided by Respondent, this petition will be denied for lack of merit.

I.   BACKGROUND

A.   The Second Chance Act

Residential Re-Entry Center ("RRC") assignments are governed by 18 U.S.C. § 3624(c)(1), regularly referred to as the Second Chance Act.  *See*, Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008.  In essence, the Act extended the maximum amount of time that the Bureau of Prisons ("BOP") may place an inmate in an RRC from 180 days to twelve months.

Section 3624(C):

(1) In General. The Director of the BOP shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. The authority provided by this subsection may be used to place a prisoner in home confinement....
...

(4) No limitations.-Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
...

2

(6) Issuance of regulations.  The Director of the
Bureau of Prisons shall issue regulations pursuant to
this subsection . . . which shall ensure that
placement in a community correctional facility by the
Bureau of Prisons is-

    (A) conducted in a manner consistent with
    section 3621(b) of this title;

    (B) determined on an individual basis; and

    (C) of sufficient duration to provide the
    greatest likelihood of successful
    reintegration into the community.

18 U.S.C. § 3624(c).

Section 3621(b) states:

    (b)   Place of imprisonment.  The Bureau of Prisons
    shall designate the place of the prisoner's
    imprisonment.  The Bureau may designate any
    available penal or correctional facility that
    meets minimum standards of health and
    habitability established by the Bureau, whether
    maintained by the Federal Government or otherwise
    and whether within or without the judicial
    district in which the person was convicted, that
    the Bureau determines to be appropriate and
    suitable, considering-

    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the
      sentence- (A) concerning the purposes for which
      the sentence to imprisonment was determined to be
      warranted; or (B) recommending a type of penal or
      correctional facility as appropriate; and
    (5)  any pertinent policy statement issued by the
      Sentencing Commission pursuant to Section
      994(a)(2) title 28 . . .
    . . . Any order, recommendation, or request
    by a sentencing court that a convicted
    person serve a term of imprisonment in a
    community corrections facility shall have no

3

> binding effect on the authority of the
> Bureau under this section to determine or
> change the place of imprisonment.

Thus, pursuant to the Second Chance Act, each inmate's pre-release RRC decision must be analyzed and supported under these § 3621(b) factors.

The BOP issued regulations setting forth procedures for evaluating inmates' RRC placement decisions consistent with § 3621(b). *See* 28 C.F.R. §§ 570.20-570.22. For instance, 28 C.F.R. § 570.22 states:

> "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

The time frames noted are set forth in section 570.21, which states:

> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
> . . .
>
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

28 C.F.R. § 570.21.

In addition to the individual determination under 18 U.S.C. § 3621(b), a prisoner's participation in, or completion of,

4

Inmate Skills Development programs within the institution is considered separately to determine if additional placement time is warranted as an incentive under 42 U.S.C. § 17541, the Federal prisoner reentry initiative.  Section 17541 requires the BOP to "provide incentives for prisoner participation in skills development programs." *Id*. at § 17541(a)(1)(G).  One such incentive may "at the discretion of the [BOP]" include "the maximum allowable period in a community confinement facility." *Id*. at § 17541(a)(2)(A).

B.  Factual Background

On or about April 10, 2006, Petitioner was sentenced in the United States District Court for the Middle District of Pennsylvania, to 110 months imprisonment, with three years of supervised release, for his conviction of Distribution and Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a).  (Respondent's Declaration of Tara Moran, Exhibit 1.)  Petitioner's projected release date is September 12, 2013, assuming he receives all good conduct time available. (Moran Decl., Ex. 1.)

On February 6, 2012, Petitioner was designated to serve his prison term at FCI Fort Dix.  Later that same month, on February 29, 2012, Petitioner's Unit Team conducted a Program Review for Petitioner.  At that time, Petitioner was about 18 months from

his projected release date in September 2013.  On March 7, 2012, the Unit Team considered Petitioner for RRC placement based upon Petitioner's earlier Program Review.  (Respondent's Declaration of Joanna Ellis, Attachments 1, 2, pg. 3.)

The Unit Team completed a RRC Consideration/Re-Consideration form that outlined the following factors considered by the Unit Team in formulating a RRC start date for Petitioner:  (1) the resources of the intended facility; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the sentencing court concerning the purpose of the imposed sentence or a recommended correctional facility for serving the imposed prison term; (5) any pertinent policy statement issued by the U.S. Sentencing Commission; and (6) whether the inmate completed (a) Inmate Skills Development programing, (b) non-residential Drug Abuse Treatment Program ("DAP"), or (c) Residential Drug Abuse Treatment Program ("RDAP").  (Ellis Decl., Attachment 1, pg. 1.)  The Unit Team also considered Petitioner's need for services, public safety and the necessity of the BOP's population.  Weighing all of these criteria, the Unit Team recommended that Petitioner receive 150 to 180 days RRC placement, noting that this "placement recommendation is of

sufficient duration to provide the greatest likelihood of
successful re-integration into the community.  (*Id.*)

The Unit Team's individualized determination for
Petitioner's RRC placement reads as follows:

> Inmate Soto is a 43-year old male convicted in the Middle
> District of Pennsylvania and sentenced to 110 months for
> Distribution and Possession with Intent to Distribute
> Heroin.  He has limited employment history:
> He founded the Just 4 Kidz Outreach program in Harrisburg,
> Pennsylvania, which was community-based, non-profit after
> school program for children in Harrisburg.  He was the
> director and president of this organization from 2003 until
> his arrest for the instant offense.  He has also worked
> part time for a cleaning service; at a car wash, a fast
> food restaurant, and a carpet cleaning business.  He has
> institutional work experience at the Food Service detail.
> Inmate Soto has no other specialized experience as noted in
> his PSI and is currently working on obtaining his GED.
> Throughout his incarceration, inmate Soto has completed
> several courses which relate to his deficit areas in the
> Inmate Skills Development System, with an emphasis on Re-
> Entry improvement and preparation, examples include:
> Spirituality, Restorative Justice, Managing Emotions,
> Conflict Management, Job Fair, Family Life Relationships,
> and a Leadership course.  He has also completed the Life
> Connections Program (643 hours).  He has completed the 40-
> hour and Non-Residential Drug Abuse Treatment Program as
> "strongly" recommended by the Court.  He has a lengthy
> criminal history consisting of: Burglary, Larceny,
> Resisting Arrest, Obstructing Police, Possession of
> Narcotic Equipment (2x), Possession of Heroin, Possession
> of Cocaine, Aggravated Assault (shooting death), Unlawful
> Delivery of Heroin, Possession with Intent to Distribute
> Heroin, Loitering to Sell Drugs, Harassment, Disorderly
> Conduct, Distribution of Heroin, Retail Theft (2x),
> Criminal Conspiracy (3x), and Theft by Deception.  Inmate
> Soto has a significant history of drug and alcohol abuse,
> which includes: marijuana, heroin, and daily use of cocaine
> as an adult.  He has maintained contact with his family and
> they have remained supportive of him.  Prior to his
> incarceration, he lived in Harrisburg, Pennsylvania with
> his wife since 2002.  Upon release from custody, inmate

Soto plans to return to Harrisburg to reside with his wife
and children (two children are under the age of 21), where
he is familiar with community resources.  The Court that
imposed the sentence did not provide a statement regarding
specific RRC placement.  He is also satisfactorily
participating in the Inmate Financial Responsibility
Program (IFRP), and currently owes the Court the balance of
two fines: $504.11.  The Unit Team considers inmate Soto to
be a high risk for recidivism.  As a result, the Unit Team
deems 150-180 days of RRC placement time would help to
facilitate a successful re-integration into the community.
Based on his minimal employment readiness skills, need to
obtain full-time employment, family and financial
resources, and considering the safety of the community, the
Unit Team deems the recommendation for RRC placement is
substantiated.  In addition, the Unit Team has discussed
methods to secure employment; i.e. employment center etc.,
as well as drug abuse treatment centers in his community.
The Unit Team also encouraged inmate Soto to begin reaching
out to prospective employers prior to his release from
custody.

(Ellis Decl., ¶ 7 and Attachment 1, pp. 1-2.)

On or about February 25, 2012, Petitioner filed an

administrative remedy form BP-9 with the Warden at FCI Fort Dix,

requesting a 12 month RRC placement.  On March 26, 2012, the

Warden denied Petitioner's request for a 12-month RRC placement,

relying substantially on the Unit Team's determination and

recommendation.  (Moran Decl., Ex. 2.)

Thereafter, on April 2, 2012, Petitioner appealed the

Warden's decision to the Regional Director.  The Regional

Director denied Petitioner's administrative appeal in a response

dated May 1, 2012, finding as follows:

You appeal the decision of the Warden at FCI Fort Dix and
contend staff did not properly consider your request for

8

Residential Reentry Center (RRC) placement.  You believe a 180-day RRC placement is insufficient to meet your re-entry needs.  You request consideration for 12 months RRC placement pursuant to the Second Chance Act (SCA).

Placement in an RRC is designed to provide transition for inmates reintegrating into society near the end of their sentences.  Pursuant to Program Statement 7310.04, <u>CCC Utilization and Transfer Procedures</u>, when evaluating an inmate for RRC placement, a number of factors are weighed in determining a recommendation for placement. Determinations are based on the individual's needs, existing community resources, institutional adjustment, length of sentence, and the need to provide for the safety and security of the general public.  Inmates are also considered under the SCA which looks at the resources of the facility, nature and circumstances of the offense, history and characteristics of the inmate, statement of the court imposing the sentence and any pertinent policy statement by the U.S. Sentencing Commission.

Records indicate you have a September 12, 2013, projected release date.  Your Unit Team considered your individual situation, programming and transitional needs pursuant to the above criteria and recommended a 150 to 180-day RRC placement.  As indicated by the Warden, this placement was determined to be sufficient to provide you the greatest likelihood of successful reintegration into the community. Staff are afforded broad discretion in reaching this decision and you present no evidence this discretion was abused.  Accordingly, your appeal is denied.

(Moran Decl., Ex. 2, pg. 5.)

Petitioner did not appeal the Regional Director's decision to the Central Office.  (Moran Decl., ¶ 4.)

On August 3, 2012, the Warden signed the Institutional Referral for RRC Placement form recommending the RRC placement range between March 22, 2013 to April 19, 2013.  (Ellis Decl., ¶ 8 and Attachment 3.)  This form was then sent to the

Philadelphia Community Corrections Office ("CCO") to determine Petitioner's RRC placement in Harrisburg, Pennsylvania.  (Ellis Decl., ¶ 8.)

Petitioner filed the instant habeas petition under 28 U.S.C. § 2241 on or about May 18, 2012.  He filed a supplemental petition on July 25, 2012.  (Docket entry no. 2.)  The Government filed a response to the petition, together with the relevant administrative record, on October 26, 2012.  (Docket entry no. 6.)  Petitioner thereafter filed a reply/traverse on or about November 20, 2012.  (Docket entry no. 7.)

## II.  DISCUSSION

### A.  Standards of Review

Petitioner brings his habeas petition as a pro se litigant. A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998); *Lewis v. Attorney General*, 878 F.2d 714, 721-22 (3d Cir. 1989); *United States v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969), *cert. denied*, 399 U.S. 912 (1970).

Section 2241 of Title 28 of the United States Code provides in relevant part:

> (c)The writ of habeas corpus shall not extend to a prisoner unless- . . . He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(a), (c)(3).

B.  Exhaustion of Administrative Remedies

As an initial matter, Respondent argues that Petitioner did not fully exhaust his administrative remedies before filing this habeas petition.  Namely, Petitioner did not complete his administrative review process because he did not file an appeal before the Central Office.  However, in his reply, Petitioner attaches an unsigned administrative appeal form, dated May 11, 2012, to the Central Office.  (Petitioner's Reply, Ex. C.) Petitioner filed an "Inmate Request to Staff" on June 29, 2012, asking for a receipt or response regarding his appeal to the Central Office.  (*Id*., Ex. D.)  Petitioner alleges that he wrote to the Central Office as instructed, but has not received any response.  He therefore construed the lack of response to be a denial of his appeal.  *See* 28 C.F.R. § 543.18.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has

11

exhausted all available administrative remedies.[1]  *See, e.g.,*
*Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Arias v.*
*United States Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981);
*Soyka v. Alldredge*, 481 F.2d 303, 306 (3d Cir. 1973).  The
exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the
> relief requested conserves judicial resources; and (3)
> providing agencies the opportunity to correct their
> own errors fosters administrative autonomy.

*Goldberg v. Beeler*, 82 F. Supp.2d 302, 309 (D.N.J. 1999), *aff'd*,
248 F.3d 1130 (3d Cir. 2000).  *See also Moscato v. Federal*
*Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996).

---

[1] In general, the BOP Administrative Remedy Program is a multi-
tier process that is available to inmates confined in
institutions operated by the BOP for "review of an issue which
relates to any aspect of their confinement."  28 C.F.R. §
542.10.  An inmate must initially attempt to informally resolve
the issue with institutional staff.  28 C.F.R. § 542.13(a).  If
informal resolution fails or is waived, an inmate may submit a
BP-9 Request to "the institution staff member designated to
receive such Requests (ordinarily a correctional counsel)"
within 20 days of the date on which the basis for the Request
occurred, or within any extension permitted.  28 C.F.R.
§ 542.14.  An inmate who is dissatisfied with the Warden's
response to his BP-9 Request may submit a BP-10 Appeal to the
Regional Director of the BOP within 20 days of the date the
Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate
may appeal to the BOP's General Counsel (Central Office) on a
BP-11 form within 30 days of the day the Regional Director
signed the response.  *Id*.  Appeal to the General Counsel (Central
Office) is the final administrative appeal.  *Id*.  If responses
are not received by the inmate within the time allotted for
reply, "the inmate may consider the absence of a response to be
a denial at that level."  28 C.F.R. § 542.18.

Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. *See, e.g., Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); *Carling v. Peters*, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In *Snisky v. Pugh*, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit. *See* 974 F. Supp. 817, 819 (M.D. Pa. 1997), *rev'd on other grounds*, 159 F.3d 1353 (3d Cir. 1998). The court recognized that exhaustion could be excused where it would be futile. *See id.* In *Snisky*, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial. Thus, the court addressed the claims on the merits.

13

Likewise, in *Ferrante v. Bureau of Prisons*, the court found that if the petitioner's claim was meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing *Snisky*, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  *See id.  See also Fraley v. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, this Court finds that Petitioner did attempt to exhaust his administrative remedies on appeal to the Regional Director, which appeal was denied on the merits on May 1, 2012. (Moran Decl., ¶ 4.)  Moreover, it would appear that Petitioner also attempted to exhaust his administrative appeals to the Central Office as required, but received no response to this last appeal.  Consequently, the Court finds that Petitioner did exhaust his administrative remedies.

However, even if Petitioner had not filed an administrative appeal to the Central Office as asserted by the Government, it is clear that any effort now to have Petitioner exhaust his

14

administrative remedies by appeal to the Central Office would be futile, as he will be released to RRC placement relatively soon, such administrative appeal would likely be rejected as untimely, and the Central Office would "almost certainly" have denied the appeal.  *See Fraley,* 1 F.3d at 925; *see also Ferrante*, 990 F. Supp. at 370, and *Snisky*, 974 F. Supp. at 819-20.  Moreover, Petitioner's claim is clearly without merit, so the exhaustion issue need not be reached.  Accordingly, the Court will address the merits of this petition.

C.   The Petition is Without Merit

Here, Petitioner argues that the BOP violated the Second Chance Act and procedural due process by failing to make an individualized assessment of his eligibility for the maximum 12-month RRC placement.  He principally contends that the FCI Fort Dix staff determined his RRC placement pursuant to a directive from the BOP's General Counsel that is contrary to the Second Chance Act, as found in this Court's prior ruling in *Strong v. Schultz*, 599 F. Supp.2d 566 (D.N.J. 2009).  Petitioner refers to a June 24, 2010 BOP memorandum that removed the requirement of having the Regional Director approve RRC placements of more than six months.  Petitioner alleges that the June 24, 2010 memorandum additionally allows that longer RRC placements should be considered for inmates whose following factors are high,

namely, (1) risk of recidivism, (2) demonstrated successful participation in or completion of programing opportunities, and (3) the need to establish community support systems.

More specifically, Petitioner contends that he met all of these factors, noting that the Unit Team stated that (1) Petitioner was a "high risk for recidivism", (2) Petitioner had a lengthy list of Petitioner's completed programing courses, and (3) Petitioner had a lengthy prison sentence of 110 months, has minimal employment readiness skills and has not completed his GED. (Petitioner's Reply, pg. 3.)  In addition, Petitioner points to statistical charts that show the BOP's average expected stay at an RRC was 122.9 days in 2010 and 129.7 days in 2011.  (Pet. Reply, Ex. B.)  Further, another BOP chart shows the expected length of stay in an RRC in the Northeast Region in 2010 to be six months or less.  Namely, 159 inmates or 42.5% had a six month stay, and only 2 inmates or 0.5% had a stay of 7 months, with no inmates having an expected length of stay for longer than 7 months in 2010.  (Pet. Reply, Ex. A.)  Petitioner argues that these statistics contradict the BOP's insistence that it considers each inmate on an individual basis for up to 12 months RRC placement.

In *Strong v. Schultz*, 599 F. Supp.2d 556 (D.N.J. 2009), the petitioner, Douglas Strong's RRC placement decision was made on

October 2, 2008.  Thus, the decision was made subsequent to the
April 14, 2008 memo, but prior to the October 21, 2008 enactment
of the regulations by the BOP.  In *Strong*, the court held that
the April 14, 2008 Memorandum issued by the BOP was inconsistent
with the Second Chance Act's amendments to 3624(c), because it
"impermissibly constrains staff's discretion to designate
inmates to a CCC for a duration that will provide the greatest
likelihood of successful reintegration into the community,
contrary to § 3624(c)(6)(C)."[2]  *Strong*, 599 F. Supp.2d at 563.
Thus, as to Mr. Strong, this Court held:

> Accordingly, because the duration of Strong's [RRC]
> placement was determined pursuant to these impermissible
> limitations, the BOP abused its discretion in determining
> that Strong's placement would be for six months. This Court
> will therefore grant the writ to Strong, and remand the
> matter to the BOP with instructions to consider Strong for
> a longer placement in a[RRC], in accordance with the Second
> Chance Act, and without regard to the April 14, 2008,
> Memorandum.

Id. at 563.

    In this case, however, Petitioner's placement decision was
made in February 2012, well after the effective date of the
interim rule.  Nevertheless, Petitioner alleges that his
placement decision was impermissibly constrained by an arbitrary
six-month or less presumption by the BOP in general.

---

[2] Prior to 2006, the BOP referred to halfway houses as "Community
Corrections Centers," or "CCCs."  Today, halfway houses are more
commonly known as RRCs.

Courts since *Strong* have recognized its limited holding. In cases, such as here, where Petitioner's RRC placement decision was made after the BOP issued the appropriate regulations and abandoned the directive in the Memorandum concerning the six-month presumptive placement, courts have consistently held that the Second Chance Act does not guarantee a one-year RRC placement, but "only directs the Bureau of Prisons to consider placing an inmate in a RRC for up to the final twelve months of his or her sentence." *Lovett v. Hogsten*, 2009 WL 5851205 (6th Cir. Dec.29, 2009)(unpubl.); *see also Nelson v. Zickefoose*, 2013 WL 140049 (D.N.J. Jan. 9, 2013)(Hillman, J.); *Travers v. Federal Bureau of Prisons*, 2009 WL 4508585 (D.N.J. Nov.30, 2009)(Hillman, J.)(finding that "... nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 120–150 days already approved.  These pre-release placement decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations."); *Creager v. Chapman*, 2010 WL 1062610 (N.D. Tex. Mar.22, 2010)(holding that although Petitioner disagrees with her RRC placement date after consideration of the § 3621(b) factors, this "does not establish a constitutional violation, as nothing in the Second Chance Act

or § 3621(b) entitles [Petitioner] or any other prisoner to any guaranteed placement in a residential reentry center[ ]" and "'the duration of [RRC] placement is a matter to which the [BOP] retains discretionary authority.'" (citations and quotation omitted)); *Chaides v. Rios*, 2010 WL 935610 (E.D. Cal. Mar.15, 2010)(noting that "In sum, the BOP has discretionary authority to transfer an inmate to an RRC at any time, after considering the factors set forth in 18 U.S.C. § 3621(b), and has a separate and distinct obligation to consider an inmate for transfer to an RRC for up to twelve months prior to the inmate's release date, after considering the factors set forth in section 3621(b)." (citation omitted)); *see also Wires v. Bledsoe*, 2010 WL 427769 (M.D.Pa. Feb.3, 2010)(finding "... since the petitioner's unit team recommended significantly less than six months (only 60 days) in a RRC, there is no basis to infer that their discretion was in any way constrained or chilled by the requirement stated in the memoranda that RRC placement beyond six months must be based on unusual or extraordinary circumstances and must be approved by the Regional Director"); *Torres v. Martinez*, 2009 WL 2487093, at *4-5 (M.D.Pa. Aug.12, 2009)(finding "... the Bureau of Prisons did not violate the Second Chance Act when it determined that Petitioner Torres would be placed in pre-release custody for six months, regardless of whether it followed the

April 18, 2008 Memorandum or the October 2008 Regulations when it reviewed the petitioner's case"); *Ramirez v. Hickey*, 2010 WL 567997 (E.D.Ky. Feb.12, 2010)(finding there was nothing presented to indicate that the RRC placement decision was "based upon arguably discretion-limiting criteria contained in the now defunct April 14, 2008, Memorandum").

In fact, cases brought before various district courts around the country have resulted in the courts examining whether the § 3621(b) factors were considered by the BOP in making the RRC placement decision, after an individualized assessment. When the 3621(b) factors are considered, the courts are satisfied that the law was correctly applied and followed.

Accordingly, this Court's review is limited to whether the BOP abused its discretion. *Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012)(citing *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1991)). Here, the record clearly establishes that the Unit Team and reviewing officials properly exercised their discretion in accordance with the statutory factors enumerated in § 3621(b) and on an individualized basis. This is evidenced by the Exhibits to the Ellis Declaration, in particular, the Residential Re-Entry Center Consideration/Reconsideration form, which concludes that the 150 to 180-day recommendation for RRC placement was based on Petitioner's specific, individual

20

circumstances.  (Ellis Decl., ¶¶6, 7 and Attachment 1.)
Petitioner's disagreement with the outcome does not entitle him
to habeas relief.  *See Nelson*, 2013 WL 140049 at *6 (citing
*Creager v. Chapman*, 2010 WL 1062610 (N.D.Tex. Mar. 22, 2010)).
Moreover, his references to general statistical data does not
disprove that an individual assessment was performed in
Petitioner's case, especially where the factors and Petitioner's
specific circumstances were carefully reviewed and discussed, as
evidenced in the record provided herein.

Thus, based on the foregoing, this Court finds that the BOP
complied with the Second Chance Act and Petitioner has not
demonstrated that he "is in custody in violation of the
Constitution or laws or treaties of the United States ...." as
required for relief under 28 U.S.C. § 2241.

### III.  CONCLUSION

For the reasons set forth above, this habeas petition will
be denied with prejudice for lack of merit.  An appropriate
order follows.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge